PANISH | SHEA | RAVIPUDI LLP
JESSE CREED (to be admitted pro hac vice)
TRISTAN MALHOTRA (to be admitted pro hac vice)
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: 310.477.1700
Facsimile: 310.477.1699
jcreed@panish.law
tmalhotra@panish.law

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

PX-ROYAL PRESS, INC., a New York corporation, individually and on behalf of all others similarly situated,

Plaintiff,

v.

RICOH USA, INC., a Delaware corporation

Defendant.

Case No.

**NATIONWIDE CLASS ACTION COMPLAINT FOR VIOLATIONS OF**:

1. BREACH OF CONTRACT
2. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
3. DECEPTIVE ACTS AND PRACTICES (N.Y. Gen. Bus. Law § 349)
4. COMMON LAW FRAUD

**DEMAND FOR JURY TRIAL**

Plaintiff PX-ROYAL PRESS, INC. brings this action individually and on behalf of all others similarly situated ("Plaintiff") alleging the following upon information and belief based upon personal knowledge:

**INTRODUCTION**

1. This action arises out of an illegal scheme by RICOH USA, INC. ("Ricoh") to overcharge its customers in violation of its form agreement. In essence, Ricoh sells printing equipment to its customers in exchange for fees based on a per-page charge. Ricoh imposes a contractual ceiling of 10% on the annual increases to the per-page charge after an initial period, but has adopted an internal, secret, and undisclosed policy of actually imposing higher annual

PANISH | SHEA | RAVIPUDI LLP

increases on its customers. This internal companywide policy is not only a blatant violation of the contract Ricoh has with its customers, but also evinces a fraudulent intent not to abide by the contractual ceiling it agreed to from the inception of the contract.

2. Because Ricoh uses a form agreement with its customers and has admitted to Plaintiff that it has adopted this internal policy inconsistent with the express language of its contracts, Plaintiff brings a class action on behalf of itself and all others similarly situated for breach of contract, breach of the implied covenant of good faith and fair dealing, and deceptive business acts and practices, and fraud. For the reasons set forth below, this action is an exemplar class action. Ricoh is a multinational company with thousands of customers. The interpretation of the contractual ceiling in the form agreement and the application of Ricoh's internal companywide policy will be questions of law or fact common to the class. Plaintiff's claims are typical of claims that could be brought by other customers of Ricoh to which the form contractual ceiling and company policy have applied.

## JURISDICTION AND VENUE

3. Jurisdiction is proper under pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiff, a New York corporation, seeks relief on behalf of a Class, of which at least one member resides in a different state than that of Defendant. Defendant Ricoh is a Delaware corporation with its principal place of business in Exton, Pennsylvania. The proposed Class consists of more than 100 members. Further, based on the production of documents in the parallel class action in *Mike the Printer, Inc. v. Ricoh USA, Inc.*, Case No. 2:24-cv-08192-JFW (C.D. Cal.), the damages, when aggregated among a proposed class in the thousands, exceed the $5,000,000 threshold for federal court jurisdiction

4. Venue in this Court, in the Southern District of New York, is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts or omissions giving rise to the claims herein took place in this District, and under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant is subject to this Court's personal jurisdictions with respect to this action and is therefore deemed to reside in this District.

## THE PARTIES



PANISH | SHEA | RAVIPUDI LLP

5. Plaintiff runs a local full-service copy shop that prints a variety of products for its customers including posters, postcards, flyers, brochures, event tickets, banners, and labels. Plaintiff uses commercial machines, including photocopiers and printers, to print large volumes of paper.

6. Ricoh touts itself as a global company with headquarters in Tokyo, Japan. Ricoh also has a United States division, headquartered in Exton, Pennsylvania.

## FACTUAL ALLEGATIONS

### The Parties' Agreement

7. Plaintiff entered into a written agreement with Ricoh dated on or about January 2, 2015 whereby Plaintiff purchased a copier machine from Ricoh and Ricoh agreed to provide maintenance services for the machine, in exchange for payment from Plaintiff, on an on-going basis (the "Agreement").

8. The initial term of the Agreement was a period of 60 months. Per the Agreement, Ricoh would provide maintenance services for the machine Plaintiff purchased and in exchange would charge Plaintiff $0.0039 per page for black and white copies made on the machine. Ricoh agreed to bill Plaintiff for the maintenance services on a quarterly basis.

9. Further, the Agreement stated that after the initial term of the Agreement (60 months), Ricoh could raise its rates up to 10%, annually, from the preceding year's rates. The Agreement reads as follows: "Unless otherwise expressly agreed to in writing, if the term of this Order exceeds twelve (12) months, the Service Charges and any rate expressly stated in this Order may be increased by Ricoh up to ten percent (10%) annually for each year beyond the initial twelve (12) month period, and Customer expressly consents to such adjustment without additional notice." This provision in the Agreement was a standard provision in one of Ricoh's form contracts with its customers with a percentage cap of 10% for Plaintiff's contract. The standard provision reads: "Unless otherwise expressly agreed to in writing, if the term of this Order exceeds twelve (12) months, the Service Charges and any rate expressly stated in this Order may be increased by Ricoh up to [INSERT] percent annually for each year beyond the initial twelve (12) month period, and Customer expressly consents to such adjustment without additional notice" (the



PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

"API Form Provision").

10. Ricoh otherwise expressly agreed in writing to fix the rates for Plaintiff for the initial fixed term of 60 months.

11. The Agreement contained a choice-of-law provision stating that it is governed by the laws of the Commonwealth of Pennsylvania.

12. In the sixth year of the Agreement (i.e., 2020) and each year thereafter, Ricoh applied an annual price increase in excess of 10% of the then-current rates. Ricoh's application of annual price increases exceeding 10% in 2020 and in each year thereafter breached the API Form Provision.

13. Unbeknownst to Plaintiff, Ricoh never had any intent to abide by the terms of the Agreement. Rather, Ricoh had an internal companywide policy and practice of increasing the charges by a default rate higher than 10% annually irrespective of the terms of the Agreement, signifying its intent to breach the Agreement at the time it was made, rendering the 10% ceiling on annual increases in the Agreement a false promise. From the inception of the Agreement, Ricoh planned to increase the charges by a percentage greater than 10% annually, without renegotiating the Agreement or notifying Plaintiff of the impermissible change. Ricoh's purpose in doing so was to make the existing agreements so much more expensive that customers would feel pressured to purchase new equipment from Ricoh and enter into new service agreements with Ricoh.

14. The initial term of the Agreement ended in January 2020. Beginning in 2020, Ricoh began charging Plaintiff at rates equal to 15% more than the rates charged during the initial term, in clear violation of the Agreement. In 2021, Ricoh began charging Plaintiff at rates equal to 25% more than the rates charged in 2020, again in clear violation of the Agreement. In 2022, Ricoh began charging Plaintiff at rates equal to 25% more than the rates charged in 2021, again in clear violation of the Agreement. In 2023, Ricoh began charging Plaintiff at rates equal to 25% more than the rates charged in 2022, again in clear violation of the Agreement.

## CLASS ACTION ALLEGATIONS

15. The Class. Plaintiff brings this action on behalf of itself and all others similarly situated, as a member of the proposed class (hereafter the "Class") defined as all customers of

Ricoh in the United States where (1) their contract contains an Annual Price Increase limit using the API Form Provision (as defined in paragraph 9 of this Complaint), (2) Ricoh increased prices in any year by a percentage that exceeded the numerical percentage set forth in the text of that customer's API Form Provision, and (3) the contract contains a Pennsylvania choice-of-law clause.

16. The Subclass. Plaintiff brings this action on behalf of itself and all others similarly situated who are members of the Class and reside and/or transact business within the State of New York ("New York Subclass").

17. Defendant, its employees, and its agents, are excluded from the Class.

18. Plaintiff does not know the exact number of the members in the Class, but believes the Class members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

19. Numerosity. The Class is so numerous that the individual joinder of all members is impracticable. While the exact number and identities of the Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class includes thousands of members. The number and identities of such persons are ascertainable and identifiable based upon the records created and/or maintained by Ricoh.

20. Commonality and Predominance. There are multiple common questions of law and fact, the answers to which are apt to drive resolution of this case, and those common questions of law and fact predominate over any questions affecting only individual members. The common questions of law and fact include but are not limited to:

a. Whether Ricoh contracted with its customers to provide copying services at a per-page rate.

b. Whether the terms of the agreement(s) Ricoh entered into with its customers restricted the amount by which Ricoh could annually increase the per-page rates it charged.

c. Whether Ricoh unilaterally increased the amounts it charged its customers per-page in excess of the amount allowed by the parties' contractual agreement.



PANISH | SHEA | RAVIPUDI LLP

d. Whether members of the Class have incurred out of pocket losses as a direct result of Ricoh's unlawful practices.

e. Whether Ricoh's practice of charging per-page rates in excess of what it has contractually agreed to charge is a deceptive business practice under New York General Business Law § 349.

21. Superiority. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Joinder of individual claims by all Class members is impracticable. Even if every member of each Subclass could afford to sue, the court system would be unnecessarily burdened by the influx of individual suits. The prosecution of individual claims presents the potential for unfairness as a result of inconsistent or contradictory judgments. By contrast, the class action will efficiently adjudicate this controversy by resolving common questions of law and fact, supporting economies of scale, and consolidating the claims under the supervision of a single court. Plaintiff and its counsel are aware of no difficulties in managing a class action. Proper notice to the Class is reasonably feasible. Members of the Class are readily identifiable and can be notified based on available information, including Ricoh's business records.

22. Typicality. Plaintiff's claims are typical of those belonging to the members of the Class. Plaintiff's claims are typical of the Class because Plaintiff is a business that provides printing services using Ricoh printing machines and has contracted to pay Ricoh for maintenance services of those machines based on a per-page rate.

23. Adequacy of Representation. Plaintiff has no interest that is adverse to, or which conflicts with, the interests of the Class, and it is able to, and will, adequately and fairly represent the interests of the Class members. Moreover, Plaintiff has retained highly qualified, experienced, and competent counsel to prosecute the claims of the Class members, and intends to prosecute the claims vigorously. The interests of the members of the class action will be fairly and adequately protected by Plaintiff and its counsel.

24. Rule 23(b)(2) Class. Ricoh has acted or refused to act on grounds that apply generally to the Class, so that final injunctive or declaratory relief is appropriate with respect to



PANISH | SHEA | RAVIPUDI LLP

the Class as a whole.

25. Rule 23(b)(3) Class. The questions of law or fact common to Class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

26. Plaintiff reserves the right to amend the definitions of the Class and/or add subclass(es) and to amend the class action allegations stated herein.

## ***AMERICAN PIPE* AND DISCOVERY RULE TOLLING**

27. The statutes of limitations applicable to the claims of Plaintiff and the absent Class members were tolled from September 26, 2024 to June 4, 2026.

28. On September 26, 2024, Mike the Printer, Inc. filed a nationwide class action. Mike the Printer, Inc. alleged a class consisting of "all persons within the United States who, during the Relevant Time Period, entered into a maintenance services contract with Ricoh whereby Ricoh agreed to charge per-page rate for its services, agreed to limit its annual increases by a fixed percentage, and imposed annual increases higher than the fixed percentage."

29. Plaintiff and all absent Class members fell within the alleged class, as Plaintiff and all absent Class members had entered into a maintenance services contract with Ricoh whereby Ricoh agreed to charge per-page rate for its services, agreed to limit its annual increases by a fixed percentage, and imposed annual increases higher than the fixed percentage.

30. On June 4, 2026, the court in *Mike the Printer* certified the class, but removed Plaintiff and the absent Class members from the class definition. Specifically, the court certified the following class: "All customers of Ricoh in the United States where (1) their contract contains an Annual Price Increase limit using the API Form Provision, (2) Ricoh increased prices in any year by a percentage that exceeded the numerical percentage set forth in the text of that customer's API Form Provision, and (3) the contract contains a Pennsylvania choice-of-law clause." The provision referenced in the *Mike the Printer* class definition (the "*Mike the Printer* API Form Provision"), and defined as the "API Form Provision" therein, uses language different than the API Form Provision at issue here. The *Mike the Printer* API Form Provision reads:

Unless otherwise expressly agreed to in writing, if the Term (defined



PANISH | SHEA | RAVIPUDI LLP

below) of this Order exceeds twelve (12) months, the Service Charges and any rate expressly stated in this Order may be increased by Ricoh up to [INSERT] percent of the then-current Service Charges and rates annually for each year beyond the initial twelve (12) month period, and Customer expressly consents to such adjustment without additional notice.

31. Under Second Circuit precedent, *American Pipe* tolling for a person alleged to be in a class action in a complaint ceases only when a certification order excludes the putative class member. *See In re WorldCom Sec. Litig.*, 496 F.3d 245 (2d Cir. 2007). Thus, the claims of Plaintiff and all absent class members were tolled from September 26, 2024—the date Mike the Printer alleged that Plaintiff was part of the class—to June 4, 2026—the date when the certification order excluded Plaintiff from the class definition.

32. Separate and apart from *American Pipe* tolling, Plaintiff and absent Class members could not discover, and could not with reasonable diligence have discovered, Ricoh's breaches of the Agreements. Until May 2023, Plaintiff did not know, and had no reason to believe, that Ricoh was billing it at rates exceeding those the Agreement permitted. Plaintiff discovered the overcharges for the first time in May 2023.

33. Ricoh's breaches were committed in secret and were not apparent from the face of the parties' dealings. Ricoh controlled the entire billing process: Ricoh generated the invoices, calculated the charges, applied the rates, and possessed the underlying data — including meter readings, usage data, rate tables, and contract pricing terms — necessary to verify whether the amounts invoiced conformed to the parties' contract. Plaintiff had no access to Ricoh's internal billing systems, rate configurations, or the data inputs from which Ricoh's charges were calculated.

34. Each invoice Ricoh issued constituted an implicit representation that the amounts charged were calculated in accordance with the parties' contract. Plaintiff reasonably relied on those representations. Nothing on the face of the invoices, and nothing in Ricoh's course of dealing, gave Plaintiff reason to suspect that Ricoh was charging amounts the contract did not authorize.

## **CLAIMS FOR RELIEF**

### **FIRST CAUSE OF ACTION**



PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

**(Breach of Contract)**

**(On Behalf of Entire Class)**

35. Plaintiff incorporates by reference and realleges all paragraphs previously alleged, as if fully set forth herein.

36. Plaintiff and other members of the Class entered into written form agreements (collectively, the "Agreements," which includes Plaintiff's Agreement) with Ricoh whereby, *inter alia*, Ricoh agreed to provide maintenance services for a Ricoh machine, in exchange for quarterly payments at a per-page rate. The Agreements are identical or substantially similar to each other in all material respects.

37. The Agreements stated that after an initial term, Ricoh could raise its per-page rates up to a contractual ceiling (in the case of Plaintiff, it was 10% annually), from the preceding year's rates.

38. After the initial term, Ricoh had a policy and practice of unilaterally raising rates by a percentage in excess of the contractual ceiling, overcharging and overbilling its customers, including Plaintiff.

39. Ricoh breached the Agreements by unilaterally raising the per-page rates for both black and white and color copies in excess of the annual contractual ceiling expressly set forth in the Agreements.

40. Ricoh's breach has caused Plaintiff and members of the Class compensatory damages by having paid higher prices for equipment services than they were contractually obligated to pay.

**SECOND CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

**(On Behalf of Entire Class)**

41. Plaintiff incorporates by reference and realleges all paragraphs previously alleged, as if fully set forth herein.

42. Plaintiff and other members of the Class entered the Agreements with Ricoh whereby, *inter alia*, Ricoh agreed to provide maintenance services for a Ricoh machine, in

exchange for quarterly payments at a per-page rate. The Agreements are identical or substantially similar to each other in all material respects.

43. The Agreements stated that after an initial term, Ricoh could raise its per-page rates up to a contractual ceiling (in the case of Plaintiff, it was 10% annually), from the preceding year's rates.

44. After the initial term, Ricoh had a policy and practice of unilaterally raising rates by a percentage in excess of the contractual ceiling, overcharging and overbilling its customers, including Plaintiff.

45. Ricoh breached its implied duty of good faith and fair dealing imposed on all its Agreements by intentionally overcharging and overbilling its customers in excess of the annual contractual ceiling on rate increases. Ricoh has thereby prevented Plaintiff and members of the Class from receiving the benefit of their contractual bargains.

**THIRD CAUSE OF ACTION**

**(Deceptive Acts and Practices; N.Y. Gen. Bus. Law § 349)**

**(On Behalf of New York Subclass)**

46. Plaintiff incorporates by reference and realleges all paragraphs previously alleged, as if fully set forth herein.

47. This claim is brought on behalf of the New York Subclass.

48. New York General Business Law § 349 prohibits "deceptive . . . acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"

49. Ricoh's acts, conduct, and business practices as alleged above are deceptive. Upon information and belief, Ricoh knowingly enters into contractual agreements with customers knowing that it will increase the annual per-page rates beyond what is permitted under the contract. Ricoh lures customers into long-term agreements through these false promises to cap the annual increase in per-page fees, and then, once a customer has become reliant on Ricoh's services and terminating the relationship would be disruptive, Ricoh refuses to honor the terms of the agreement, and attempts to strong-arm customers into paying for newer and more expensive machines.



PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

50. As a direct and proximate result of Ricoh's deceptive business practices, Plaintiff and the members of the New York Subclass have been injured in fact.

51. Ricoh's deceptive business practices as alleged above present a continuing threat to Plaintiff, the New York Subclass, and members of the public because Ricoh persists and continues to engage in such practices and will not cease doing so unless enjoined or restrained by this Court.

52. Under New York General Business Law § 349(h), Plaintiff, on behalf of itself, New York Subclass members, and members of the general public, seeks an order of this Court:

a. Enjoining Ricoh from continuing to engage, use, or employ any deceptive business act or practice and any act prohibited by New York General Business Law § 349;

b. Actual damages, or fifty dollars, whichever is greater, for Plaintiff and each member of the New York Subclass;

c. An increase in the award of damages to an amount not exceeding three times actual damages, up to one thousand dollars, on the ground that Ricoh willfully and knowingly violated § 349; and

d. Reasonable attorney's fees.

**FOURTH CAUSE OF ACTION**

**(Common Law Fraud)**

**(On Behalf of Entire Class)**

53. Plaintiff incorporates by reference and realleges all paragraphs previously alleged, as if fully set forth herein.

54. Ricoh's Agreements provided that it would not increase per-page rates for equipment services in excess of an annual contractual ceiling set forth in the Agreements' API Form Provisions.

55. Ricoh induced Plaintiff and other Class members to enter into the Agreements by promising to limit annual price increases after the Agreements' initial fixed terms, in accordance with each Agreement's API Form Provision.

56. Apart from the one-time purchase of the machines, the API Form Provision governed Plaintiff's and other Class members' entire payment obligations to Ricoh.

57. Ricoh promised to abide by its promise to limit annual price increases after an initial fixed term if Plaintiff and other class members entered into Agreements with Ricoh.

58. Ricoh intended for its promise to induce Plaintiff and other Class members into contracting with Ricoh instead of Ricoh's competitors in the printing marketplace. Ricoh presented Plaintiff and other Class members with Agreements containing a promise to limit annual price increases after an initial fixed term to provide false assurance to Plaintiff and other Class members that their service charge rates would remain limited, such that Plaintiff and other Class members would not seek more cost-effective contracts with Ricoh's competitors.

59. Plaintiff and other Class members relied on Ricoh's promise. Plaintiff and other Class members chose to contract with Ricoh rather than Ricoh's competitors because Ricoh promised to limit annual price increases after an initial fixed term.

60. Ricoh did not intend to perform its promise at the time Ricoh made it. Ricoh had a policy and practice of overcharging Plaintiff and other members of the class in excess of the promised annual limit on rate increases.

61. Ricoh has acted with fraud and malice deserving of punitive damages as a result of the aforementioned conduct.

## PRAYER FOR RELIEF

Plaintiff, on its own behalf and on behalf of the Class, respectfully prays for judgment against Ricoh as follows:

1. Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

2. Designate and appoint Plaintiff as Class Representative;

3. Appoint Plaintiff's counsel of record as Class Counsel;

4. Enter judgment against Ricoh and in favor of Plaintiff and the Class for all causes of action;

5. Enter injunctive relief requiring Defendant to cease their unlawful, unfair, and/or deceptive business practices;

6. Order Ricoh to disgorge all amounts that it has improperly received and retained



PANISH | SHEA | RAVIPUDI LLP

through the misconduct alleged herein;

7. Award Plaintiff and the Class all compensatory damages for Ricoh's unlawful conduct available under all causes of action;

8. Award Plaintiff and the Class punitive damages for Ricoh's unlawful conduct;

9. Award Plaintiff and the New York Subclass actual damages or fifty dollars, whichever is greater, together with treble damages up to one thousand dollars and reasonable attorney's fees, under New York General Business Law §349(h);

10. Award pre-judgment and post-judgment interest to the extent required by law;

11. Award Plaintiff reasonable attorneys' fees and costs to the extent permitted by law;'

12. Grant appropriate declaratory relief; and

13. Grant such further relief as the Court deems appropriate.

DATED: October 14, 2026

PANISH | SHEA | RAVIPUDI LLP

By: [signature]

Jesse Creed (To Be Admitted Pro Hac Vice)
Tristan Malhotra (To Be Admitted Pro Hac Vice)
Attorneys for Plaintiffs



PANISH | SHEA | RAVIPUDI LLP

PANISH | SHEA | RAVIPUDI LLP

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury as to all issues so triable in this matter.

DATED: October 14, 2026

PANISH | SHEA | RAVIPUDI LLP

By: ______________________

Jesse Creed (To Be Admitted Pro Hac Vice)
Tristan Malhotra (To Be Admitted Pro Hac Vice)
Attorneys for Plaintiffs